### SCHOEN v. DRY-DOCK, E. B. & B. R. Co.

*(Superior Court of New York City, General Term.* May 5, 1890.)

DEATH BY WRONGFUL ACT—PROXIMATE CAUSE—EVIDENCE.
> In an action for the death of plaintiff's intestate, caused by the negligence of the driver of the defendant's horse-car, it appeared that intestate was taken to a hospital, and lived for 20 days after the accident, and that while there his arm was amputated, but no evidence was given that the injury was sufficient to cause death or to require amputation, and neither the hospital doctors, nor the surgeon who performed the amputation, were called as witnesses. The only witness relied on to prove that the death of intestate resulted from the accident was a physician who made a *post mortem* examination, and gave it as his opinion that the cause of death was exhaustion and pleurisy following amputation, but he did not account for the origin of the pleurisy. *Held,* that the complaint was properly dismissed for want of proof that the death was the legitimate result of defendant's negligence.

Appeal from jury term.

Action by Louis Schoen, as administrator, etc., of Christian Schoen, against the Dry-Dock, East Broadway & Battery Railroad Company. The trial court dismissed the complaint, and from the judgment entered in defendant's favor plaintiff appeals.

Argued before FREEDMAN and O'GORMAN, JJ.

*George W. Wilson,* for appellant. *John M. Scribner,* for respondent.

FREEDMAN, J. This action was brought to recover damages for the benefit of the next of kin of the decedent, by reason of the death of the decedent, alleged to have been caused by the negligence of defendant's driver. The decedent, at the time of his death, was four and one-half years of age. Such an action did not lie at common law. The right of action was first created by chapter 450 of the Laws of 1847; and the action may now be maintained, under section 1902 of the Code of Civil Procedure, by the executor or administrator of the decedent, for a wrongful act, neglect, or default by which the decedent's death was caused. The burden was therefore upon the plaintiff to establish, as part of his case and by competent evidence, that a wrongful act, neglect, or default on the part of defendant's driver was the actual cause of death. The plaintiff at the trial did not sustain the burden in this respect.

True, it is not necessary that the cause of death should be shown by the testimony of an expert. There, for instance, a person, on being run over, is killed on the spot. The cause of death is apparent to every ordinary observer. But in the case at bar the boy was taken to a hospital, and lived for 20 days thereafter. While there, his arm was amputated. No witness described the injuries sustained as sufficiently severe. His little brother testified that one wheel of the car passed over decedent's hand; but no evidence was given that the injury was sufficient to cause death, or to require amputation. The hospital doctors were not placed upon the stand. The surgeon who performed the amputation was not called as a witness. The only witness relied on by the plaintiff to prove that the death of the decedent resulted from the injuries which he sustained on the occasion of the occurrence complained of was a physician attached to the coroner's office, who had never seen the decedent until after death. This witness admitted that he had no personal knowledge as to the character of the injuries which resulted in the amputation; that there were no other signs of violence except the amputated arm; that the amputation of a person's arm is not usually fatal; and that after amputation it is impossible to tell what the conditions were that necessitated the operation, because the operation would necessarily remove all the indicative features of the case. As the result of a *post mortem* examination which he had made, and which had disclosed that the left side of the *pleura*, or membrane involving the lung, was in a state of acute pleuritic inflammation, he undertook to say that, in his opinion, the cause of death was exhaustion and acute pleurisy following in the wake of the amputation; but he did not account in any way for the origin of the pleurisy. As the case was left, the pleurisy might come from a cold or exposure before the accident; or from the condition of the boy immediately preceding the accident, although he then appeared in health, or from subsequent unnecessary exposure in the hospital. This being, in substance, the state of the evidence, there was no sufficient competent proof that the death was the legitimate result of any wrongful act, neglect, or default on the part of defendant's driver, and plaintiff's complaint was properly dismissed. That being so, it is not necessary to determine whether a sufficient case was made out in other respects. The judgment should be affirmed, with costs.